UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

STATE FARM FIRE & )
CASUALTY COMPANY, )
 )
        **Plaintiff,** )
 )
v. ) Case No. 17-CV-0656-CVE-FHM
 )
DAVID SCOTT, as Administrator of the )
Estate of Stephen A. Schmauss; )
STANLEY VERNON MAJORS; and )
VICTORIA WILLIAMS, as Personal )
Representative of the Estate of Khalid Jabara, )
 )
        **Defendants.** )

**OPINION AND ORDER**

Now before the Court are plaintiff State Farm Fire and Casualty Company's (State Farm) motion for summary judgment (Dkt. # 26), and defendant Victoria Williams's motion to certify question of law to the Oklahoma Supreme Court (Dkt. # 27).[1]

**I.**

On August 12, 2016, defendant Stanley Vernon Majors shot and killed his neighbor Khalid Jabara, Williams's brother. Dkt. # 26-1. On February 7, 2018, a jury in the District Court in and for Tulsa County, State of Oklahoma, found Majors guilty of murder in the first degree in violation of

---

[1] Although defendant Victoria Williams filed a motion for summary judgment (Dkt. # 32), it is not yet fully briefed and at issue. However, her arguments in support of summary judgment mirror and are repetitive of her arguments opposing plaintiff's motion for summary judgment. Compare Dkt. # 28, with Dkt. # 32. Therefore, the Court can rule on both motions for summary judgment without awaiting a response and reply to defendant Williams's motion for summary judgment.

Okla. Stat. tit. 21, § 701.7. Dkt. # 26-3; Dkt. # 28, at 7.[2] Stephen Schmauss, Majors's now deceased husband, owned the gun Majors used to kill Jabara. Dkt. # 26-1. Williams asserts that, on the day Majors killed Jabara, Schmauss bought Majors alcohol. Dkt. # 28, at 6. In addition, Williams contends that Majors tormented the Jabara family for many years—including running over Jabara's mother in 2015—because Majors, mistakenly, believed the Jabaras are Muslim (in fact, they are Christian emigrants from Lebanon). Id.

At the time Majors killed Jabara, plaintiff had issued a homeowners' policy to named insureds Schmauss and Majors. Plaintiff had also issued to Schmauss a personal liability umbrella policy (PLUP). The homeowners' policy provides:

> **COVERAGE L - PERSONAL LIABILITY**
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

Dkt. # 26-7, at 23. The homeowners' policy defines bodily injury as "physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom." Id. at 9. Additionally, the homeowners' policy states:

---

[2] Section 701.7 provides, "[a] person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being . . . ." Okla. Stat. tit. 21, § 701.7.

'occurrence . . .' means an accident, including exposure to conditions, which results in:

a. **bodily injury**; or

b. property damage.

Id. at 10. The homeowners' policy does not define accident. Additionally, it excludes coverage for "bodily injury or property damage: (1) which is either expected or intended by the insured; or (2) which is the result of willful and malicious acts of the insured." Id. at 24. The homeowners' policy also contains a "severability of insurance" clause, which states, "[t]his insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one occurrence." Id. at 27.

The PLUP, issued to Schmauss only, provides:

> If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**. The most we will pay for such **loss** is the Coverage **L** Limit of Liability, as shown on the declarations page, regardless of the number of **insureds** who may be liable, claims made, or persons injured.

Dkt. # 26-8, at 10. The PLUP defines loss as "an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period." Id. at 6. Like the homeowners' policy, the PLUP does not define accident and excludes coverage for "**bodily injury** . . . which is either expected or intended by the **insured**." Id. at 13.

On February 24, 2017, Williams filed a petition (Dkt. # 20-3) in the state court case underlying this matter, <u>Victoria Williams, as Personal Representative of the Estate of Khalid Jabara v. Vernon Stanley Majors & Stephen A. Schmauss</u>, Tulsa County District Court Case No. CJ-2017-00716. Williams's petition alleges that Jabara wrongfully died, "as a result of the negligent and/or

3

reckless acts and/or omissions of" Majors and Schmauss. Dkt. # 20-3. In December 2017, plaintiff filed this case, seeking a declaratory judgment that neither the homeowners' policy nor the PLUP provides coverage for any of Williams's state court claims against the named defendants.

## II. Williams's Motion to Certify

Williams moves to certify the following question of law to the Oklahoma Supreme Court:

> In instances where there are multiple insureds under a policy of liability insurance and a chain of events leads up to a bodily injury or property damage claim against both insureds, does the Oklahoma Supreme Court agree with the Tenth Circuit Court of Appeals' [sic] decision in <u>Farmers Alliance Mutual Insurance Company v. Salazar</u>, 77 F.3d 1291 (10th Cir. 1996), which focuses only on the final intentional act leading up to the injury or damage committed by one insured rather than looking at the conduct or act of the other insured that is the basis for the claim against that other insured, to determine whether there was an "occurrence" or "loss" under the insureds' liability insurance policy, which defines an "occurrence" or "loss" as an "accident," and "accident" is not defined under the policy?

Dkt. # 27, at 6. Williams concedes that <u>Farmers Alliance Mutual Insurance Company v. Salazar</u>, 77 F.3d 1291 (10th Cir. 1996), "addressed policy language and facts similar to those found in this case," and that there "does not appear to be any Oklahoma decisions" addressing her proposed certified question. <u>Id.</u> at 8, 11. Williams nevertheless contends that the Court should certify her proposed question to the Oklahoma Supreme Court because <u>Salazar</u> is "flawed and should not be indicative of how the Oklahoma Supreme Court would decide this issue." <u>Id.</u> at 9.

Plaintiff responds that certification is inappropriate because <u>Salazar</u> is binding on this Court, as it applied nearly identical policy language to very similar facts, and the Oklahoma Supreme Court has not issued an intervening decision. Dkt. # 29, at 1 (citing <u>Wankier v. Crown Equip. Corp.</u>, 353 F.3d 862, 866 (10th Cir. 2003) ("When a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit . . . unless an intervening decision of the state's highest court has resolved this issue.")).

4

The Court finds that Williams's proposed question should not be certified to the Oklahoma Supreme Court. By Williams's own admission, the facts and policy language at issue in Salazar are similar to the policy language and facts presented in this case,[3] and the Oklahoma Supreme Court has not issued an intervening decision that would disturb Salazar's holding. Under Wankier, therefore, Salazar is binding on this Court, and Williams's contentions that the case is "flawed" and "should not be indicative of how the Oklahoma Supreme Court would decide this issue" are irrelevant.[4]

Accordingly, defendant's motion to certify question of state law to the Oklahoma Supreme Court (Dkt. # 27) is **denied**.

### III. Plaintiff's Motion for Summary Judgment

Plaintiff argues that, under Salazar, neither the homeowners' policy nor the PLUP provides coverage for Williams's state court claims against the named defendants, because Majors intentionally shot and killed Jabara and, therefore, "there is no occurrence or loss because the bodily injury was not caused by an accident." Dkt. # 26, at 7 (citing Salazar, 77 F.3d at 196-97).

Williams concedes that neither policy provides coverage for Majors's conduct. Dkt. # 28, at 20. Williams contends, however, that the homeowners' policy's severability of the insureds clause requires consideration of Schmauss's conduct separately from Majors's conduct and that, when viewed in isolation, Schmauss owning the gun and providing Majors alcohol on the day he killed Jabara qualifies as an "occurrence," because "there is no way that Schmauss, through those actions,

---

[3] See infra pages 6-7.

[4] Of course, it is the Tenth Circuit's prerogative to revisit the issues in Salazar, or to certify a question to the Oklahoma Supreme Court.

5

could have intended for [Jabara] to be killed." Id. Stated differently, according to the Court's understanding, Williams is arguing that Jabara's bodily injury was, from Schmauss's perspective, an accidental consequence of purchasing the gun and providing Majors alcohol. In addition, Williams argues that there are ambiguities—that must be resolved in her favor—in the homeowners' policy and PLUP, because neither policy defines accident or indicates whose perspective the Court must consider in determining whether an occurrence was accidental. Id. at 20-24.

In Salazar, the Tenth Circuit considered whether a homeowner's policy provided coverage, under Oklahoma law, for a mother whose son's friend killed a peer with a gun that the mother had given her son, despite knowing that her son was involved in gang activity. The parties stipulated that the mother was negligent in her supervision of her son. 77 F.3d at 1294. The homeowner's policy provided:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> to which this insurance applies, caused by an occurrence . . . .

Id. The homeowner's policy defined occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Id.

Based on its interpretation of Oklahoma law, the Tenth Circuit found that "when determining whether a bodily injury was 'caused by an occurrence' the question of whether there was an 'occurrence' should be resolved by focusing on the injury and its immediately attendant causative circumstances." Id. at 1296. Accordingly, the Tenth Circuit held that the homeowner's policy did

6

not provide coverage for the mother, because the immediate causative circumstance of the decedent's bodily injury was the son's friend's act of intentional murder, which was "not 'an accident.'" Id. at 1297 (quoting Penley v. Gulf Ins. Co., 414 P.2d 305, 308 (Okla. 1966) ("an intentional or willful tort would negative the existence of an accident.")).

Likewise, this Court finds that neither the homeowners' policy nor the PLUP provides coverage for Williams's claims against Majors or Schmauss. As Williams concedes, both policies clearly exclude Majors's act of intentionally shooting and killing Jabara. And, under Salazar, even assuming, arguendo, that Schmauss was negligent, and viewing his conduct separately from Majors, his alleged acts of purchasing the gun at some point and providing Majors alcohol on the day Majors killed Jabara do not qualify as an occurrence, because those actions do not comprise the immediately attendant causative circumstances of Jabara's bodily injury. Indeed, as Salazar instructs, under the homeowners' policy and PLUP, there was no 'occurrence,' because Majors's intentional act of shooting and killing Jabara was the immediate causative circumstance of Jabara's bodily injury, and intentional murder is not an accident.

Accordingly, plaintiff's motion for summary judgment (Dkt. # 26) should be **granted** and Williams's motion for summary judgment (Dkt. # 32) should be **denied**.

**IT IS THEREFORE ORDERED** that plaintiff's motion for summary judgment (Dkt. # 26) is **granted**, and defendant Victoria Williams's motion to certify question of law to the Oklahoma Supreme Court (Dkt. # 27) and motion for summary judgment (Dkt. # 32) are **denied**.

**IT IS FURTHER ORDERED** that a declaratory judgment will be entered herewith in favor of plaintiff and against defendants, pursuant to 28 U.S.C. § 2201, declaring that:

7

1. State Farm has no obligation to defend David Scott, as Administrator of the Estate of Stephen A. Schmauss, or Stanley Vernon Majors against Victoria Williams's claims in <u>Victoria Williams, as Personal Representative of the Estate of Khalid Jabara v. Vernon Stanley Majors & Stephen A. Schmauss</u>, Tulsa County District Court Case No. CJ-2017-00716.

2. State Farm has no duty to indemnify David Scott, as Administrator of the Estate of Stephen A. Schmauss, or Stanley Vernon Majors against Victoria Williams's claims in <u>Victoria Williams, as Personal Representative of the Estate of Khalid Jabara v. Vernon Stanley Majors & Stephen A. Schmauss</u>, Tulsa County District Court Case No. CJ-2017-00716.

**DATED** this 27th day of June, 2018.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE